May it please the court, counsel for the government. Good morning. My name is Roger Nuttall. I'm an attorney from Fresno, California, and I represent the defendant appellant, Efren Rodriguez, in this matter. Your honors, I would wish to only take about 10 minutes to summarize my position on behalf of Mr. Rodriguez. I think it's important conceptually in terms of looking at the various issues raised in this case to recognize that this case is, that Efren Rodriguez presented himself as a rather unique type of participant in this case. He was, had no criminal history with reference to narcotics involvement. He was not a buyer of narcotics, nor was he a seller of narcotics. He operated a restaurant where ultimately he became involved in introducing four alleged drug suppliers to an undercover government agent and a confidential informant. It is submitted, as the jury found in the trial of this case, that he was not a co-conspirator with any of the participants, but rather, in the words of the language of the cases, found himself as participating, as a mere participant in the ongoing negotiations and charges which led to transactions. Pardon me, counsel. The charges were aiding and abetting. Yes, I know. Not conspiracy. I understand. I believe, Your Honor, and I thank you for that. He was charged with conspiracy, but he was acquitted of that. And so, what he suffered conviction for was on a theory of aiding and abetting the possession, the alleged possession with the intent to sell narcotics and the allegation of maintaining or operating a drug-related premise. Now, having said that, and going back to the concept that I believe Mr. Rodriguez presents himself as one who is in a unique position in these types of cases, is that ultimately, ultimately, to be guilty of aiding and abetting, to be guilty of aiding and abetting, one must knowingly and intentionally participate in each essential element of the underlying crime. Now, in this particular case What is the exact language? I'm sorry. What is the exact language with regard to aiding and abetting? The exact language with respect to aiding and abetting is, let me, if I may just refer here, to be guilty of aiding and abetting another person, it is necessary that the defendant, and I'm quoting from United States versus Vasquez-Chan, quote, in some sort associate himself with the venture that he participated in it as something that he wishes to bring about and that he seek by his action to make it succeed. And I suggest that that language further suggests that he, that person must participate in aid and abet in each essential element of the underlying crime. For example, the underlying crime is possessing with the intent to distribute. Right. And he introduces this, someone whom he does not know to be, but turns out to be a government informant. He introduced them to four sources for the sole purpose of facilitating drug transactions. Isn't that so? It's true, as you state, Your Honor, that he, that there is a facilitation based upon the introduction. But that is where it ends. In other words, he does not participate as an aider and abetter in terms of facilitating the consummation of any sale. Did he provide the premises where it? Pardon me? Where did this take place? This took place at his restaurant. His restaurant. So he provided the place where it happened. I thought the transactions, many of them, did not take place at the restaurant. It took place outside. I wouldn't say that he provided a place for this to take place because there's no evidence that he did anything other than engage in these introductions. He walked away after the introductions, right? Pardon me? He walked away after each introduction while they negotiated. He did. He was never present at any sale. He never negotiated. My understanding is that at least with respect to some series of these, the first series of transactions, he introduced them to one person who then conducted several different transactions with them, each of which was individually charged, I believe, and that the actual transactions happened somewhere else. That's correct. All right. So they didn't take place on the premises. Right. And although he introduced them to four different people, with regard to the first set of charges, he introduced them once, but there were five transactions involved. Correct. You're not doing a very good job of presenting your case, if you want to know the truth, in terms of what the details are. He did not participate in anything other than the introduction, which is a given. And even, I'm going to go so far as to say that he was never present in any of the transactions that ultimately took place. But some of them happened at least in part in the restaurant. That's right. But there was no evidence that he had any knowledge or awareness that that took place, or that he volitionally or positively encouraged that to occur, or made the restaurant available. Well, but that could be right. I mean, they said to him, find me a drug dealer, and he said, okay, here's a drug dealer. And then they said, we don't like this drug dealer. Well, I'll find you another drug dealer. Well, we don't like the prices of this drug dealer. Oh, don't worry about it. Well, I can't find the drug dealer. I'll find him for you. He certainly did facilitate the transactions. There's no question but that we have to live with, meaning me and my client, Mr. Rodriguez, the fact that there were discussions and introductions. But there weren't only introductions. With regard to some of the drug dealers, there was further facilitation. I wouldn't say that there was evidence of furtive behavior. I didn't say furtive behavior. I said further facilitation. Further facilitation, I suppose, only in the sense that these people were allowed to be on the premises, but no active participation. You're saying he's like the third monkey? He saw no evil? Is that the idea? No. I don't think we can look at this just in a vacuum. I mean, here's a man who admittedly and acknowledged that he did what he did, but it was limited to where he did not participate. For example, he's charged with aiding and abetting the possession of narcotics with intent to sell. He wasn't aware of any. He had no possession, certainly, of his own. He had no intention of selling. He had no ---- I thought he put the seller and what he thought was the seller and buyer together. He introduced, again, here we have a non-drug participant without any history introducing four drug suppliers to an undercover agent and a confidential informant. That is the given. What did he think he was introducing them for? Well, I think it can be presumed that he may have known that there may have been ultimately some transactions. Now, there is also the first issue in our brief with respect to the issues of coercion and duress and intimidation, which, of course, is another issue. He knew there were transactions. They told him there were transactions. They came back and said, you know, we didn't like those drugs or we did like those drugs or they were charging me too much. I mean, he was not he didn't walk away after the introduction. I understand that. But, again, I don't think that is enough. In other words ---- Your argument appears to be that he has to participate in the actual transaction. He has to do something more than ---- Just put the buyer and seller together. Absolutely. Absolutely. And make his place available for some of the transactions. Okay. I think we should hear from the government because you want to ---- Thank you. Thank you. Good morning. May it please the Court. My name is Lori Gray. I represent the United States. The defendant raises three issues on appeal, none which have any merit. Beginning with the sufficiency argument, defendant was convicted of counts of possession of aiding and abetting the possession with intent to distribute and separately maintaining a premises. With regard to Judge Berzon's question, the elements of the offense for aiding and The instructions are at volume 7 of the reporter's transcripts, pages 1059 to 1060, and specifically what the government must prove to show aiding and abetting is that, first, the crime was committed by at least one other named person. Second, that Mr. Rodriguez knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of the crime. And third, that Mr. Rodriguez acted before the crime was completed. It's not enough for the government to prove that Mr. Rodriguez merely associated with the person committing the crime or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. And, Your Honors, what the record clearly shows is that the defendant introduced four different drug dealers to a confidential informant at his restaurant during an drug transactions. And contrary to the defendant's argument, that's not where it ended. Again, in answer to your question, Judge Berzon, there was further facilitation with each of these four separate drug dealers. For example, with regard to drug dealer number one, Dominguez, which is counts 8, 9, 10, and 11, the defendant introduced the confidential informant to Dominguez at his restaurant as a drug dealer who could supply the confidential informant with what he wanted. And indeed he did. And after a one-pound drug sale where the C.I. paid more than he wanted to, he complained to the defendant. And the defendant's response wasn't, hey, that's not my involvement. I introduced you. I'm done. What the defendant said is that once the Dominguez gets to know you better and trust you, the price will come down. By his very actions, he encouraged further drug deals. He encouraged further distribution of drugs. Kagan. I should say that the only one in this series that bothers me at all is the Dominguez one, because as I understand it, he introduced him, and then there were a series of transactions, each individually charged, none of which took place at the restaurant. That's correct. No particular evidence that he knew of any of the particular transactions that the defendant knew of any of the particular transactions, or did anything more between the first introduction and the point at which they complained and they said, okay, we'll introduce you to someone else. There was. Let me address that concern. The introduction first happens on April 16th, 2002. He's introduced for the very purpose, this is a drug dealer who can get you what you want. That very day, that's count eight, Your Honor, that Dominguez provides a sample. That's charged. So that very day of the introduction to a drug dealer for the purpose of drug sales, there is the drug exchange. Then when he's Not at the restaurant. Not at the restaurant. Not at the restaurant, but the same day. When he introduces him, when the introductions are made, many of these times it's that he wants someone who's going to produce 5 pounds, who's going to produce 10 pounds. It's clear that there's going to be an ongoing relationship, and these are multidrug deals. So simply two weeks later on April 29th, there's the 1-pound drug deal. The first deal, the day of, was the sample, and then two weeks later we have the 1-pound drug deal, and it's after that drug deal that the defendant complains and says, hey, the price went up. And, excuse me, the CI complains, and the defendant again interjects himself. He doesn't say, that's your problem. He says, trust him. Trust me. Once you do more sales, the price will come down and it will get better. So they do do more sales, and the price does come down. There is a sale on June 4th for 1 pound. There's a sale for June, or excuse me, there's the sale in August. Now, with regard to that, in between what we have the defendant doing for the CI, and, excuse me, yes, doing for the CI is exchanging 10,000, or doing for Dominguez is an exchange of $10,000 at his restaurant. Dominguez tells the defendant, I've got money. I've got money I can't put in the bank. I want to exchange small bills for $100 bills. But that was the CI who did that, at least according to your brief. He's talking about, yes, it is. And the defendant agrees to help, and he does. But that has nothing to do with Dominguez that anybody knows about. I mean, that laundering concept is not necessary to your case at all, is it? Well, what it shows is that the defendant, again, is using the ---- Or what you say is laundering, because that's a stretch of the laundering concept. It's an exchange of the cash from large bills. What is presented in the record is that he had a huge stack of money, and he didn't want to have a huge stack of money, so he wanted a smaller stack of money. It doesn't have nothing to do with Dominguez. What it has to do with is showing the defendant, again, he is involved in these transactions. He's facilitating. He's going forward. Counsel, I've been taking a look at the instruction that you referred to on page 31, and I don't know whether this is standard Ninth Circuit instruction, but it seems to me that the thing that Mr. Nuttall is seeking to seize upon is the last part of it that says that Mr. Rodriguez may be found guilty of possession of meth with the intent to distribute, even if he personally did not commit the act or acts constituting the crime, when, in fact, if you look back at what the definition is of aiding and abetting, it is permitted to be found in terms of knowingly and intentionally aiding by procuring a person who is going to commit each element. It doesn't require this defendant to commit each element of the act. Correct. Now, it seems to me, though, that you've introduced a confusing component by that thing that I read first, and I can understand an argument that says, well, wait a minute, he didn't do each element of the offense. True enough, right? Right. But what that instruction does say is that the government does not have to prove that he was present at any sale or said any terms of the sale. It has to show that he wanted it to succeed. I understand. But you've introduced kind of a fiction at the end of it, and it's understandable that might really confuse the jury, I would think. That was the instruction that was given. You're correct, Your Honor. And there was never an objection to that instruction. I understand that. I'm only talking about the future, I guess. Anyway, go ahead. I didn't mean to interrupt you. And with regard to the other drug dealers, the other counts, and I don't know if Your Honor has any question about those. I was less bothered by them. It was that series at the beginning where I thought that they seemed to have gone off on their own somewhat. And I guess my question is, if that's how I read the facts, could — and I understand that there was this — I don't think the money instance has anything to do with it, but there was this intermediate conversation about the cost, the price. So that seems to be encouraging continuing transactions. And during this time — But your ultimate position is he doesn't have to know, even know, of any particular transaction. No. That's correct, because what he's doing is introducing to four different people to establish a relationship with them. And with each one of those, when they come back and there's complaints, as you've alluded to, from the confidential informant or the U.C., at no time does the defendant say, hey, I'm done with this. All I was doing was introducing you guys. He goes further. He makes phone calls to say, how come you're not here? That's with regard to the second. It just seems a little over the top to me, if you're not — especially because he was acquitted of the conspiracy, to have him responsible for individual transactions of which he was not even aware. And that's what this comes down to, doesn't it? Well, with regard to the conspiracy, I realize this is a degree of speculation as to why the jury acquitted on conspiracy, but what defendant argued in closing was that there wasn't evidence that tied all four people together. I understand, but I'm asking you conceptually. Yes. I mean, suppose this had gone on for two years. If he introduced Dominguez to this person and then there were 50 transactions over two years and nothing else intervened, is he responsible for all 50? I think it's so fact-driven, Your Honor. In that case, you would have to have evidence showing that he interjected himself at various places. And that's what we have here. We have an 11-month period. It's tight temporally. And during that 11 months — Well, we have one — on my thesis, we have one intervention. Yes. Of four transactions. Is that right? With regard to Dominguez. I'm just talking Dominguez now. Yes. But that transaction that you're looking at, the last one, August 12th, between — before that last one, he has an interaction with other drug dealers, Cisneros and Fernandez and Hernandez. And I think what that shows, Your Honor, is an intent on the defendant's part to facilitate transactions in sales with all these drug dealers. But that's not the question. The question is, did he facilitate the particular transaction charged? You charge discrete transactions. Correct. The question is, did he facilitate a transaction that he didn't know about? And I would — And there's no evidence that he knew. We have down here, we have counts, what, 8, 9, 10, and 11. Is that what we're talking about? Yes, that's what we're talking about, Your Honor. All right. And do we — on the August 16th one, it was the same day he introduced him. So let's say that's okay. April 16th. April 16th. All right. But as to the April — and when did the conversation come up about he charged me too much? That was after the April 29th one? That was after the April 29th, yes. All right. So — It was actually on May 2nd. So we have the transaction April 16th. But he doesn't know specifically about the April 29th one, the June 4th one, or the August 12th one. Is that right? So then there's June 4th is the one-pound — not the one-pound transaction. And then June 22nd, there's a $10,000 exchange of money that occurs. But it's just irrelevant, because it doesn't implicate Dominguez in any way. So let's leave him out. Okay? All right. And then August 12th, the two-pound deal. Okay. And my argument to the Court is that these were relationships that defendant was putting — introducing the CI and the UC to and expected that there would be multiple drug deals, and these were multiple drug deals during a four-month period. Right. But that's why I gave you my hypothetical. Right. What if it went on for two years and it was a big deal? Then I think there's a problem. Why? On your theory, I don't see the difference. That's what I want to know. Well, I think two years versus four months is significantly different for starters. And during that four-month period, he's dealing with all these other drug dealers. I mean, the intent is to hook these UCs, the undercover agent and the confidential informant, up with drug dealers, and that there would be — Okay. Fine. But I don't understand why that makes him responsible for particular drug deals he didn't know about. Well, the question is, was it foreseeable for him to know about these? And I think that — No, that's not the question, because that's not the definition of aiding and abetting. It's not only his intent. It's what he did. An aider and abetter is liable for the — for any criminal act which in the ordinary course of things was the natural and probable consequence of the crime that the advisor committed under the Barnett case that I cited in our brief. That was — that was a case where there was information provided at the beginning of June and a — and a search warrant turned up documents at the end of August a couple months later. And this Court said that there isn't a limit on how long the time can be, the timeframe, as long as there is evidence of encouragement and advisement. It doesn't matter. Here's what the Court said. It doesn't matter if advice and encouragement is not acted upon for long periods. What is necessary is that the defendant counseled and advised the commission of the crime and that the advice influenced the perpetration of the crime. And I would argue to this Court that that's what we have here, that in saying I'm going to introduce you with people that can give you what you want, and with several of these dealers, what they wanted was multi-pound deals, 10 pounds a week for a period of time, that he surely knew in introducing them that there would be more than a deal done that day, that week, that this was ongoing. And then by virtue of the fact that they came back into the restaurant, that there were complaints that he interjected, he counseled, he reassured, he gave advice how to give lower prices in the future, he vouched for the credibility of the buyer, he issued warnings at one point to the confidential informant to be aware of a certain seller, he spoke knowledgeably and expansively about the drug trade. And essentially what you're saying is that all of that fits the idea of procuring a person who's going to commit offenses, so you're saying that once that's done, that any of those transactions thereafter fit within the aiding and abetting? I'm saying there has to be more, and in this case there was, with each of the separate four dealers, and in fact, in arguing at closing, the defense counsel said, listen, you don't have proof that these four dealers all knew each other and there was this one huge conspiracy, and so you can't convict on the conspiracy, even if you find that defendant had a separate conspiracy with each of the four separate dealers. So I think that explains the conspiracy acquittal versus the conviction on the aiding and abetting. I understand that, but there is a difference. What I'm saying is there's a difference between conspiracy and aiding and abetting in the sense that if there's a conspiracy, he is responsible for any ensuing crime. But if there isn't a conspiracy and there wasn't or the one wasn't found, I'm not sure you don't have to prove on a count-by-count basis that he did something to facilitate the crime, and I have a hard time somewhat, I think about it, with the fact that he didn't know of the actual transactions. And I understand where we can get to a situation, I don't know if this alleviates the Court's concerns, where I don't think you can have a situation where you introduce someone and then 15 years later there's a drug deal. In this case, what I'm trying to point out is it's a pretty short time frame from the introduction of that first drug dealer to the very last drug deal done by the fourth one. It's 11 months. And during that time frame, there's constant activity at that restaurant of these drug dealers coming in. Three of the deals were done at the restaurant. Kagan. I really have a hard time with slipping over to the other ones. I mean, I understand that it helps you tell you if that is intent, but it doesn't help in telling me how he facilitated what Dominguez did or the fact that he facilitated what someone else did. It's not relevant. Well, specifically with regard to Dominguez, you have the first count eight and you have the second count 10 in a very short period of time, and then count 10 is the June 4th one-pound deal after the complaint that he raised his price. So those three, Your Honor, I would argue are very tight to what the defendant did. The August 12th one is two months removed, and my argument with regard to that count is that it was encompassed within the introduction of the others. Now, if there's any concerns with regard to the other three drug dealers that are much tighter in the time frame, I'd like to address those. If you don't have any concerns with that one. It don't appear to be any. Okay. So it's specifically with regard to count 11, if I'm understanding the Court's concern. Judge, yes. Okay. And I think I've given it my best shot. Thank you. Thank you. If there's any other questions, I'm happy to answer them on the other issues, or else I would submit. Thank you. Thank you. I'm going to be very short and very specific, if I may be. In our brief, we pointed out the application of the U.S. v. Ramos-Ruskone, the 1993 Ninth Circuit case, and I think my point is that we have to look at all of those factors, and then ultimately, in terms of assessing whether or not there's criminal culpability pursuant to aiding and abetting, the Court has to look at each of the counts and determine not just whether or not there was an introduction made at some past time or over a period of time, but look at each of the counts to determine if Mr. Rodriquez actually facilitated in any way that particular transaction. And I submit that mere association with known drug dealers and introducing what is not enough. Well, putting them together, introducing them for the purpose of drug transactions is a different thing. I understand, Your Honor, that there exists the presumption that by introducing them that he would have an expectation that at some point in time there may well be a transaction, but that's, I believe, where it ends. And he cannot be held responsible for any and all transactions. And he knew there were transactions. Pardon me? He knew there were transactions. He knew there were at some point in time subsequent to the transaction, but he in no way participated in those transactions. Well, counsel, was the instruction that I read to government counsel from, was that objected to as an inaccurate statement? Unfortunately, it was not objected to. I believe that was an instructional error that should have been objected to. Frankly, I think that it violates the basic premise that in terms of the law. Have you looked at Section 2, which is the aiding and abetting statute? Yes. And does that not contemplate what was covered in that instruction? I don't believe so, because, again, in order to, and we're talking about the idea, the concept that the defendant in an aiding and abetting situation must knowingly and intentionally aid and abet the principles in each essential element of the crime. And that, I believe, is the bottom line. And that does not occur here. Okay. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, McFadden v. Krauss. Thank you.
judges: Shadur, Schroeder, Berzon